UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80192-ROSENBERG/REINHART

UNITED STATES OF AMERICA

vs.

ALLAN FRANKLIN DUNN,

Defendant.
_____/

## FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

The United States of America and Allan Franklin DUNN, (hereinafter "Defendant") agree that had this case proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt as to Count 1 of the Indictment charging the defendant with Conspiracy to Possess with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

### Elements

**First:** The Defendant and others agreed to accomplish a shared and unlawful plan to possess a mixture and substance containing a detectable amount of methamphetamine;

**Second:** That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it; and

**Third:** That the object of the unlawful plan was to possess with intent to distribute a controlled substance, specifically, fifty (50) grams or more of a mixture and substance containing a detectable amount of methamphetamine.

### Facts

1. In April 2022, the DEA began investigating the distribution of crystal methamphetamine by a retail dealer operating in West Palm Beach, FL. The investigation progressed and in or around

1

July 2022, the DEA identified co-defendant Victoria Williams ("V.Williams") as distributing crystal methamphetamine to the retail dealer's suppliers. Over the course of the next several months, law enforcement conducted several controlled purchases of crystal methamphetamine from co-defendant V.Williams. On April 6, 2023, agents began intercepting the wire and electronic communications of a telephone number used by co-defendant V.Williams to communicate primarily with co-conspirators for a period of 30 days. During those interceptions, agents determined that co-defendant V.Williams used a second telephone number to facilitate her crystal methamphetamine distribution as well. As such, on May 5, 2023, agents renewed the interception of co-defendant V.Williams' first phone for an additional 30 days and on May 6, 2023, initiated the interception of her second phone for a period of 30 days. During the period in which agents intercepted telephones used by co-defendant V.Williams, agents identified several co-conspirators, including the defendant.

2. On April 6, 2023, the following call was intercepted between co-defendant V.Williams and the defendant:

Defendant: If I get three whole ones, what's the price tag on that?

V.Williams: Hello?

Defendant: Huh.

V.Williams: (Unintelligible)

Defendant: If I get three zips. What will you charge me for three zips?

V.Williams: It's still going to be two twenty five. I drop the price when you get five. Honestly.

Defendant: Ok so two twenty five across the board.

V.Williams: Yeah.

> Defendant: Ok. That's fine, that's fine.
>
> V.Williams: If you get five or more then I can drop it to two hundred.
>
> Defendant: Alright that's cool. Let me ahh, I got a plan. (Cross talk)
>
> Defendant: Yeah, no trust me I got a plan.
>
> V.Williams: (Unintelligible)
>
> Defendant: Um, you got some that are are that are solid?
>
> V. Williams: Yeah yeah Oh yeah yeah.
>
> Defendant: Ok, cause he's real funny about that part.
>
> V.Williams: No problem, we good.

3. During this call, the defendant and V.Williams discussed the price that V.Williams would charge for crystal methamphetamine. Specifically, the defendant asked how much V.Williams would charge him for three ounces ("whole ones" and "zips") of crystal methamphetamine. V.Williams explained that she would charge him $225 per ounce and that she would drop the price to $200 if he purchased five ounces of crystal methamphetamine. Lastly, the defendant asked V.Williams if the crystal methamphetamine contained larger pieces ("more solid") because his customer preferred large pieces ("he's real funny about that part").

4. On April 11, 2023, the following call was intercepted between co-defendant V.Williams and the defendant:

> V.Williams: Please tell me some good news.
>
> Defendant: Um, he said. He said give him just a second. He's gonna check to see what he has left over. If he can do it or not.
>
> V.Williams: Give him what?

>Defendant: He's going to see if he can do it or not. He said giv-, give him just a minute. I was making sure you were still answering.
>
>V.Williams: Up, answering and ready to go. I'll be there in 'bout five minutes.
>
>Defendant: Ah ok. So, we still, ah. Same deal you told me last night.
>
>(Unintelligible) (Cross talk)
>
>Defendant: It was three and a half for six. I just told him straight up. I ain't making, I ain't. I was going to take the half for myself. I gave him a straight price six hundred.
>
>(Unintelligible)
>
>Defendant: Yeah of course. I was texting last night.
>
>V.Williams: Alright no problem. Six hundred.
>
>(Unintelligible)
>
>Defendant: Alright that's cool. I'll call you as soon as I hear from him.
>
>V.Williams: We can come to him. He don't have to get out of his bed.
>
>Defendant: Nah, he ain't in his bed.
>
>V.Williams: Oh.
>
>Defendant: He ain't in his bed.
>
>V.Williams: Well call me as soon as he say yes so he don't be waiting.
>
>Defendant: Ok. Alright I will.

5. During this exchange, the defendant explained to V.Williams that he was waiting on a customer to determine if the customer would have the funds to purchase crystal methamphetamine. Later, the defendant asked V.Williams if she would adhere to the deal that they previously negotiated, specifically three and a half ounces for $600 ("It was three and a half for six.") and that the defendant would keep half of an ounce for himself. V.Williams agreed, and they agreed to

4

speak again later that day. On a call intercepted later that day, the defendant stated that he believed the customer would come through with the funds. Over the course of several intercepted text messages, the defendant and V.Williams discussed their meeting. V. Williams stated, "I'm 6 min away." The defendant responded, "Kill lights when you pull up. Text me I'll come out." V. Williams later sent a text message to the defendant, "Here." The defendant and V.Williams thereafter conducted the crystal methamphetamine transaction.

6. On April 14 at approximately, 8:47 p.m., the following relevant portions of a call was intercepted between the defendant and V.Williams:

Defendant: You got plans tonight?

V.Williams: What happened?

Defendant: Nah, I'm trying to see you at some point. Your hear me?

V.Williams: What happened?

Defendant: Nah, I said I'm trying to see you at some point.

V.Williams: What you needed?

Defendant: Usual.

V.Williams: Ok.

Defendant: Ah. I'm going to talk to the other dude first and see what he, what he, if he goin' go out too.

V.Williams: There's only shake left so he probably don't want to come.

Defendant: Huh?

V.Williams: There's only shake left.

Defendant: Ah really?

V.Williams: Yeah.

Defendant: Alright. When will that, when will that be different?

V.Williams: Hopefully soon. Hopefully tonight.

Defendant: Me. I don't really care so much but.

V.Williams: I know that's why you probably don't want to call him.

Defendant: Yeah, your right I don't.

V.Williams: But it's shake I'm doing it for one eighty.

Defendant: Oh yeah, let's do that. How long you talkin?

V.Williams: You got to go pick it up. (Unintelligible)

Defendant: Sh*t. I'm in Wilton Manors with no ride.

V.Williams: Well you got to go pick it up.

Defendant: Where at?

V.Williams: I'll send you the address. It's right there on Sunrise.

7. During this call, the defendant contacted V.Williams to conduct a crystal methamphetamine transaction. The defendant told V.Williams that he would call his customer; however, V.Williams informed the defendant that she only had small pieces ("shake") of crystal methamphetamine and his customer would not like it. They then agreed to conduct a transaction of one ounce of crystal methamphetamine for $180.

8. Later that evening, V.Williams texted the defendant and stated, "2857 nw 6th court Fort Lauderdale fl 33311." In the early morning hours of April 15, 2023, the defendant called V.Williams and explained that he was at the address. V.Williams thereafter explained, through text messages and phones calls, that co-defendant John Morgan Williams was supposed to be there to deliver the crystal methamphetamine but fell asleep. Later that day, the defendant sent a text message to V.Williams and stated, "They're going to bail on me and I'm going to lose both of these

sales I promise them I would have it for a first thing this morning." V. Williams then traveled to the defendant's residence located at 4820 NE 4th Avenue, Oakland Park, Fort Lauderdale, Florida. Agents conducting physical surveillance observed the defendant conduct the crystal methamphetamine transaction with V.Williams.

9. During the interception period of V.William's telephones, agents intercepted approximately two hundred and fifty pertinent calls and text messages between the defendant and V.Williams.

10. All events occurred in the Southern District of Florida.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

1/22/24
DATE

By: _____
BRIAN D. RALSTON
ASSISTANT UNITED STATES ATTORNEY

1/4/2024
DATE

By: _____
SARAH MAYA
COUNSEL FOR DEFENDANT

1/4/2024
DATE

By: _____
ALLAN FRANKLIN DUNN
DEFENDANT